Good morning, Your Honor. My name is Tom Reichert, and I'm here today on behalf of the appellants. With me also is Earl Pott, who is counsel for one of the individual appellants, Brian Shor. And if the panel should have any questions particularly directed towards issues about Mr. Shor, he's here and stands ready to answer any questions the panel may have. And if you might, Your Honors, I would like five minutes of my time reserved for rebuttal. Sure. Thank you. This appeal, or these appeals, I guess, since we have three of them here, they raise questions in the first instance about the intersection of California's anti-SLAPP statute and about the Securities Act of 1933. And the first question is whether or not filing with the SEC falls within an act that triggers California's anti-SLAPP statute. And there are various levels at which this can be analyzed, but I would submit that if we start just at the very most general level, the answer is that it does trigger that statute. The operative provision of the anti-SLAPP statute is 425.16b, and it provides that a claim shall be ‑‑ a cause of action shall be struck for any claim arising from any act of that person in furtherance of the person's right of petition or free speech. Now, it goes on to delineate some contours of that in subsection E, but the California Supreme Court, in particular in the Briggs v. Eden Counsel Hope and Opportunity case, emphasized repeatedly that the California legislature has repeatedly acted to protect petitioning activity of any form to governmental bodies. And in this instance, what happens under the structure of the Securities Act of 1933 is that what we have here with the petition statement is exactly a form of petitioning activity. Counsel, may I ask you what regulation or statute required the submission of the evidence that's at issue in this case? Well, Your Honor, the document itself is the Form S.1. Right. And the thing that requires it, Your Honor ‑‑ No, what requires the particular information to be given that was included regarding the regulations or statute required this particular type of information to be reported? Well, Your Honor, if I may, there are two answers to that question. The first answer is when we look at this, we don't look ‑‑ we don't divide it up sentence by sentence, paragraph by paragraph, page by page. If you look at the statute, it says any statement or writing. And here the question is the Form S.1 as a whole. It's not any individual paragraph of it. And, in fact, the California courts have emphasized that the court should not get into a bright ‑‑ it's a bright line test that if the statement is made or the writing is made before a judicial ‑‑ Well, one of the cases you rely on, the Fontani case, there was a requirement for the particular form to be filed that contained the information that led to the lawsuit. And I'm asking you if there is a similar requirement to report the type of information that was reported by your client and that led to the lawsuit. Your Honor, the answer to that, if we want to look at the specific information, is if you look at the Securities Act, I believe it's Section 5, but it may be Section 6. The Securities Act of 1933 provides that certain information has to be filed and then delegates additional opportunities to the SEC to add a whole lot of additional ‑‑ What is that certain information that needs to ‑‑ that's what I'm trying to get. What information must be filed? Because if, you know, if you're saying that it's in conjunction with the proceedings, then I'm thinking you're arguing that you had no choice but to file this. Well, Your Honor, first of all, in order to sell securities, we have to file a registration statement. Section 77G, 15 U.S.C. 77G, which is Section 7 of the 1933 Act, states certain information that needs to be filed and then provides ‑‑ That's what I'm trying to get you to answer. What required this particular information to be included in the S-1 form? Well, it would be Section 7 of the 1933 Act, Your Honor, and regulation SK by the ‑‑ And what do those regulations provide that say that you have to include in your report allegations made by a former officer? Well, Your Honor, one of the things that ‑‑ I don't think there's anything that says that exactly, but to understand the entire structure of the 1933 Act, as the Supreme Court has disclosure, the purpose of it is to provide disclosure to the investing public so they're informed and can make informed investment decisions. And one of the things here, as actually on ‑‑ that Mr. Moser says in his opening brief, one of the things that has to be discussed is management's competence and integrity. And that's exactly what this disclosure is about, that a former officer of this company made allegations that the company was involved in securities fraud, and that an investigation was then conducted and that it cleared them, and that the accountants for the company also did not have any belief that there was anything wrong going on. Now, under Section ‑‑ Had you not included that in the post‑Enron environment and something had gone wrong, would an investor have had a claim under 10b-5 or some other section for failure to disclose pertinent information? I believe they would, Your Honor. And this is one of those situations. Under Section 11, actually, Your Honor, one of the things that is different between the 1933 Act and the 1934 Act, the 1933 Act has Section 11. And what Section 11 of the 1933 Act, which is 77 ‑‑ 15 U.S.C. 77K, subsection A says that any time you have a false statement or an omission of a material fact, you can be sued. And it's not ‑‑ to give teeth to this, there's no scienter requirement for that. It's strict liability. And I have been involved, Your Honor, in many cases under the Section 11, and it's the biggest nightmare for companies, because someone will say, as this Court knows, because this Court has helped make the law, the test for materiality under the securities laws is a very low test, whether or not an investor would find it to be relevant for an investor. Well, this really goes into the, had it not been included, there could have been an omission to state a material fact that a reasonable investor would have wanted to know. That's right. And what has happened, Your Honor, is that as a result of Section 11 and the no scienter requirement under Section 11, companies, and particularly underwriters who are among the people who can be sued under Section 11, companies disclose everything under the sun that is possible to avoid exactly a Section 11 lawsuit. Now, if we had not disclosed that two years earlier the former officer, the general counsel of our company, had raised allegations that the entire rest of the management that still remained at the time this was filed had engaged in securities fraud of the type that's disclosed here, I mean, it's not just ‑‑ it doesn't say securities fraud. It's an incredibly long list of things that he raised allegations about. If we had not disclosed that to the investing public, I'm sure that as ‑‑ I'm sure that an investor would say, I really would have liked to know that before I bought your stock. Okay. Let's assume it's covered that you get to the first prong of the anti‑slap law. The second prong is they have to show that they have a possibility of prevailing on the merits. A probability, Your Honor. Probability of prevailing. You put in the disclosure statement that he had been placed on administrative leave. Yes, Your Honor. Basically, that's not true. That's right. How do we deal with that? Well, Your Honor, the way we deal with that is, first of all, we do know from the declaration that was filed in the first appeal that he was placed on leave and relieved of all of his duties. So I believe that it is a wordsmithing or a semantic difference between saying you are placed on leave ‑‑ Well, isn't whether it's ‑‑ that has a defamatory meaning or not if I say that you've been placed on administrative leave, and I published that in a registration statement in front of God and everybody to read? Well, Your Honor, under California ‑‑ You're not technically under administrative leave. Isn't that a jury question whether that has a defamatory meaning? No, Your Honor. Why not? The reason for that is because, first of all, under Civil Code section 45, the California libel statute, it must be false. But as a number of cases that I've cited, and in fact one that the panel may not yet have because I filed a 28J letter this week, and it doesn't look from what I can see on the docket that it may have gotten to the panel yet, but restating a long line of authority both at the U.S. Supreme Court, at this court, and in the California courts, if there are minor errors in a statement, but the statement is basically true, it's not actionable. Well, the settlement agreement provided that he was not terminated for cause. That's right. So when you consider that in light of the fact that he was not put on administrative leave and was not fired for cause, why doesn't that at least raise a jury question about whether it was true, false, or defamatory? Well, Your Honor, first of all, all it's the settlement agreement simply says that we will not say, we are going to agree he wasn't fired for cause, but whether he was or wasn't is not the same as what it says in the settlement agreement. Well, you're sort of doing the kind of quibbling you just said they were. Well, no. Well, I apologize. My point is this. No harm. Well, please don't hold it against me, or in particular my client. But the answer to that is as follows. We could have said, because it's very clear from the e-mail from the CEO to Mr. Moser, we could have said that he was placed on leave and he was relieved of all of his duties. Now, the difference between that and saying we were placed, he was placed on administrative leave, for purposes of the gist or sting of the statement itself, is nonexistent. There's no difference. And, in fact, I believe that saying he was placed on administrative leave is less problematic than being told he was relieved of all of his duties. There's no question that we could have said in this he was relieved of all of his duties when he reported this and we placed him on leave. To say that he was placed on administrative leave has no difference in terms of the gist or sting. And that's exactly the inquiry that the Court has to look at for purposes of defamation. Did the Court get that far in this? Did the District Court get that far in this analysis? No, Your Honor, because, well, in this instance, of course, the Court rejected us on the first prong and didn't reach the second prong. So if we were to agree with you on the first prong, then it has to go back for the judge to get to the second prong? I don't believe so, Your Honor. First of all, there was a lot of briefing on this in various motions to strike and in our briefs. First of all, because these are questions that are handled de novo by the Court of Appeal, there are a number of instances in the California court system where if the trial court did not reach the first prong or denied on the first prong, did not reach the second prong questions, because the standard of review is de novo under both the first and second prongs, the Court of Appeal on review decided to go forward and look at the second prong issues regardless, because there isn't the same prudential issues that you would see, particularly on this, where there's a question of law review de novo. I can certainly understand... But if we were to send anything back, in this case, though, we're under the federal rules of civil procedure, not under California's rules, we have a very liberal amendment policy. Why wouldn't we be in a situation where we, unless something just absolutely has to be a possible way of stating a cause of action, why wouldn't we be sending back to the district court with instructions that they allow the complaint to be amended in an attempt to see whether a cause of action could be stated? Your Honor, for two reasons. First of all, I should say the court did reach many of these arguments on a motion to dismiss, and so they have been passed on before. But secondly, Your Honor, many of these questions that we raise, they are questions that are the authority in the Ninth Circuit is legion, that an amendment does not need to be granted if there's no possible way, as a matter of law, that an amendment can cure the problem. Well, take, for example, the statute of limitations issue. Here you have, if you agree with your popular list of prong one arguendo, you still have a republication to all of the investors, and who knows when they got those prospecti, isn't that a factual determination that the district court really didn't have an opportunity to pass on to determine whether they got them later, and if they were defamatory, whether the cause of action could succeed? Your Honor, first of all, I see my yellow light. I've talked far too long, but let me answer your question before I try to get out of here and leave a few words for the Brooklyn Court of Rebuttal. The answer to that, Your Honor, is on these documents, it may well be, it could possibly be, that Mr. Moser could amend as to other documents. Each publication is a separate publication, and what we know here is, for purposes of the statute of limitations, he has alleged the form S-1s, and there's a lot of vague allegations about other things, but which we don't really know about, and it may well be that if he could find something in the right time frame, it would survive. But the point under the Uniform Single Publication Act is that we don't talk about continuing course. We talk about each individual publication individually, and here, we have publications that occurred in 2003 and a lawsuit that occurred in 2005. So I believe that the statute of limitations would certainly kill. But the Uniform Single Publication Act under Karanek v. Buviosi, as I understand it, does not extend to, and I'm quoting, the situations where knowing that the matter is allegedly libelous, the defendant republishes. It doesn't, and actually, if you look at that case, Your Honor, what they say is it doesn't matter for those republications. So if there, in that particular case, there is an original edition of a book, and then there's a first edition, or there's a paperback edition, actually, is what happened there. The paperback edition falls within the statute of limitations, and that's actually. So the defamation by your lights has to be different, in a different format, different context, in order to have more than one publication? Yes, Your Honor. Well, it's very clear that, say, for example, I have a book, and I publish it this year, and then five years later, it gets republished. The republication, even if it's the same, I say I'm out of time, the republication, even if it's the same document, for that particular new publication, will reset the clock for that publication, not for the first publication. I know you're out of time, but let me ask you, regarding the intentional infliction claim. Yes, Your Honor. They allege that someone on behalf of Encore said that they were going to drive a wedge between him and his wife if he didn't settle the case, or something to that effect. Yes, my partner, Terry Bird. He was the speaker of that? Yes, Your Honor. Why is that privileged? Because, Your Honor, it was made at a settlement meeting after this case was filed. Can they say it? Can you say anything at a settlement conference? Well, actually, Your Honor, first of all, I will say, I mean, we're looking at a very We're looking at just the fair allegations, and if this case were to go forward, we would dispute that. Right. We just take the complaint as true. Let's take the complaint as true. Your Honor, in our reply brief, I don't have the case sites in my head right now, but in our reply brief, we cited numerous cases that say that you can have allegations, you can have threats. There are all sorts of things. You can say I'm going to go over and burn your house down if you don't settle the case, and that would be privileged anyway. Well, actually, there is one of the cases we cite where someone is alleged to have made a threat in connection with settlement communications, and it's found to be absolutely true. Well, there's a threat, and there are threats. I mean, there are threats that are germane to the lawsuit, such as we're going to get a judgment against you and drive you into bankruptcy, and then there are threats that have nothing to do with the lawsuit, like we're going to go over and burn your house down. Well, Your Honor. Is it your contention that you could say I'm going to burn your house down if you don't settle the case? Well, Your Honor, I'm not a criminal lawyer. I believe that may fall. You don't have to be a criminal lawyer. Well, that may fall into the category of extortion, which I think is carved out for purposes of criminal conduct. I mean, criminal conduct is always carved out. If we're going to alienate you from your wife, is it your position that that is privileged under California law? Yes, Your Honor. If you look at the cases, anything that's said in connection, the litigation privilege is absolute, Your Honor. Whether it's germane to the lawsuit or not germane to the lawsuit. Well, Your Honor, if you say that if you're going to bring this lawsuit, we're going to litigate it extremely aggressively against you, and it's really going to cause you some harm and some hell, that's allowed. That's not the question I put to you. The question is, if someone says, I'm going to alienate you from your wife, that was the statement that's alleged to you, not the one you just made, but that's the one I'm quoting is the one in the complaint. Yes, Your Honor. I believe that if you look at the California cases we cited, they're very clear in saying that the privilege, when it says it's absolute, it really means absolute. There is no, that if it's made in the law. It's going to cause damage to your children. Any statement that's made in settlement communications, that will be privileged under your constraint. No, Your Honor, under the California Supreme Court says that. That's what I'm saying. You believe that the California Supreme Court says that at a settlement conference, you can tell a party, we're going to cause problems for your children. Well, I think again that criminal conduct is always accepted. I mean, that there's always the right of criminal prosecution. But anything that's said in a court proceeding, I mean, I could say today something and it would be protected. If we step out into the settlement conference chamber and I have communications, they have to be protected also. The California Supreme Court has repeatedly said that that's the case. Okay. Thank you very much. Thank you, Your Honor. You folks have gone well over your time. We'll give you two minutes. Thank you very much. Not me, Your Honor. I would like to apologize for that. You're Mr. Day. Thank you. And good morning, Your Honor. Good morning. Good morning, Your Honor. This is my place to record Anthony Day for appellee, Mr. Mosher. I want to answer a couple of questions directly asked of counsel because I think the answers were dead wrong. The first one, and it was an excellent question, is in this S-1, was the filing of the former officer's section a required disclosure? The answer is absolutely not. It was not. And I can cite to you Regulation SK, Item 401, which goes over a plethora of items that have to be in there. And I would point out, first of all, it is the defendant's burden to provide those factual statements, that evidence, on the first prong to the trial court. So if that was the defendant's position, the defendant had to say, we had no choice but to file this section. It's clear the California Supreme Court, in cases Paul and Edwards have said, everything you throw into something that might have a connection with an official proceeding doesn't gain that protection. Counsel, I'm a little puzzled. I'm an old securities lawyer, and I'm hearing what you're saying, and I can hardly believe it. Let's say this is Enron, and let's just say that the former general counsel of Enron wrote a letter to the people that were sent a letter in this case, and claimed that there was massive accounting fraud, and all the other things that were alleged. Are you telling me that in Enron's S-1s or shelf registrations that they would not have had an obligation? Indeed, they would have been incredibly stupid not to put the allegations and the results of the investigation. Is that what you're telling me? No, because I can give you the exact answer to that question. Okay. Please do. In 31 filings prior to the S-1, including in filings proxy statements, which would have been much more relevant, not a word of this, not a single word of this, was in those statements. This was the first time it was in a statement, probably because What's the time period here? The letter occurred when, and when was the next proxy statement? When you say the... In other words, here we have an S-1, you've got a new filing, okay? You mentioned a proxy statement, and there was nothing mentioned to that. So what I'm asking is, when did Mr. Moser's letter come in? When did the investigation occur, vis-a-vis the first proxy statement after that investigation was concluded? Two and a half years prior to the S-1 is when this, quote-unquote, investigation where he was locked out. There were... And when did that terminate? July of 2001. And vis-a-vis the first proxy statement, how long a time? Within months, I believe. And there were other filings in addition to the proxy statement. So multiple times before the two and a half years. Again, no evidence provided by the defendants on this point, but 31 times. It never occurred. Never occurred until the S-1. But a proxy statement's a little different than an S-1, isn't it? It is, but it's more critical to the issue of the competence and integrity of management. You're not selling stock. No. You don't have to worry about 10B-5. You're strictly talking about whether people are going to vote for something or not vote for something, right? Or what management... Other issues involving management's governance as well. Well, that's more of a 10Q-10K kind of thing, isn't it? Nothing in those filings as well as we go along until we get... Was this mentioned in those? Just that there was a $500,000 payment to Mr. Mosher. Nothing about... Nothing to the... In fact, they complied with the contractual provisions, which are not to say anything similar. What you're saying is they mentioned it. They just didn't mention it in quite as complete a way, and from your perspective, in a way that was defamatory. Correct. But then, now you're getting into an issue of whether they've... They're putting themselves under 77, and I don't know which... I want to say X or Y or something. Doesn't matter. The criminality issue, because they headed this settlement with former officer section. Didn't settle it. Former... Title of former officer raises questions or raises, as they're now saying, accounting issues related to fraud or other things that would go to the investor. That is what he said, though, wasn't it? Let me just kind of understand this. Putting aside the administrative leave issue, what was said in the S-1 that was factually inaccurate when you compare that to what Mr. Moser had accused them of doing? Several things. One is that he had identified these accounting irregularities that they term as identified as fraud, that who they hired to do the investigation, and they didn't provide this evidence, but there's, again, plethora of evidence on emails that who they hired to do said, that's not what we're doing. We're not looking at the numbers that you're alleging do not foot, that the numbers that were recreated. We're not looking at that. So the investigation did not even cover his allegations. So you're saying that what actually occurred and what was described in S-1 were materially different, putting aside the defamation question for the moment. To the point of potential criminality, yes. So that the investigation, if you want to use it in an Enron term, was a whitewash. It was a cover-up, not implying the attorney's cover-up. They were given the wrong investigation. So first, alleging that Mr. Mosher did not raise issues, factual issues, that their accounting was plugged or didn't foot is false. That's one of his allegations. The second is that he was placed on administrative leave. There is no such creature, even in their manual, their employment. I think that's just a semantic quibble. No, and I'll tell you why it's not a semantic quibble. Placed on administrative leave and then his employment terminated. So the Judge Burns' ruling, even though it's de novo, is just so apt on this point. You're saying after all this investigation, we found nothing that points to integrity issues of management, he's placed on administrative leave and then terminated. The implication is Mr. Mosher did something wrong and was fired for a cause because he did something wrong. He was not placed on administrative leave. He wasn't even, as defendants try to say, relieved of his duties. He was locked out, nothing under the protocol for that. And by the way, there are California cases that say, let's say they had placed Mr. Mosher in handcuffs, driven him from the building and put him in jail, had him put in jail. You can't later, if that was a wrongful act, if you have no right, you can't later say, well, we truthfully said in our S-1 that we placed Mr. Mosher in handcuffs and had him arrested. That would still be defamatory. You can't say I correctly stated my illegal act and not be defamatory. But they didn't even do that. They misstated that. Okay, I hear your point, a good point. This dispute, at least as before us, is primarily in the context of anti-SLAPP legislation, which as you well know, was originally designed to protect people who appeared at planning commission meetings and so on, and they were sued by big developers and so on. It's morphed well beyond its original intention, as you also know. And so in this context, what we're really talking about is whether the speech, whether or not it was a violation of the securities laws, the 833 Act or the 834 Act or something like that. The question is whether the speech is protected, if you will, within the context of the filing with the SEC. Your position, I gather, is that the first problem is not satisfied, I gather. Is that correct? Absolutely. And I can very quickly guide you through how it cannot be. And just under the statute, and understand there's the anti-SLAPP statute, which in parts has to borrow from the litigation privilege. So the first thing we know is, as defendants argued below the trial court, official proceeding, official proceeding, there was no official proceeding. Now, we asked for some supplementary briefing, as you know, so let's treat that as true, if you will. Okay. So we go to E2, which is, is there a writing in connection, that's one part, with an issue that is under consideration or review? All of the cases say there has to be an issue then under consideration or review. So on the face of 425.16E, until the S1 is filed, there is no issue then under consideration or review. So as the trial court properly analyzed, the question is, is this a preparatory filing of some sort that, by analogy, is covered under the litigation privilege, to protect people who said, I've made a complaint of wrongdoing, or I'm going to the police station with a complaint. That's what the litigation privilege. But if that's true, if that's true, then you even have a problem with the original purpose of the anti-slap. Because when somebody goes to a planning commission meeting, you know, nothing's really started. They're going to start that right there, and that person is there, and they say what they're going to say. Exactly. So what the courts have done is draw from 47B, litigation privilege, and say, if one of the aims, this is in Fontani, one of the aims, and in Hagberg, the critical question is the aim, if the aim of your writing or your communication is to prompt an investigation or official proceeding, you're covered. The court aptly determined, you don't file an S-1 and spend half a million or more dollars trying to get your stock sale through to have yourself investigated, it can't be your aim or purpose. So from your perspective, the intent is critical. Absolutely, speaking of the California cases, under Hagberg, under Fontani, at least one of your purposes has to be to prompt an investigation or review. The only other avenue is if you are seriously considering, in good faith, litigation or some kind of action, you can file something in preparation, like a demand letter, saying I'm going to sue you if you don't do S. But what defendants' illogical argument, the court would have to do two things. It would have to say under the litigation privilege, any form you file with the government, no matter what's contained therein, is somehow imbued with the litigation privilege protection. But as the courts have said, there has to be a dispute. That's what litigation privilege protects. You have to have a dispute they're trying to resolve through whatever communication. They don't have that. And as the court observed, the only other turning its law on the head, they would have had to say we filed the S-1 with the aim or one of our purposes to have ourselves investigated. Suppose we disagree with you about prong one. Where does that take us? We go to prong two. Actually, we don't yet. Because as I guess I can't remember who asked the question before, but there are other things besides the S-1. This is almost academic. We've alleged prospectuses. We've alleged other types of defamatory material. So if the S-1 is out, you still have a year later somebody be handed a prospectus, a private third party, nothing to do with SEC's review, screening review, as they now call it, about completeness. And you think that goes to prong one as opposed to the statute of limitations issue under prong two? Absolutely. In fact, we asked the court to take judicial notice of the letter from the SEC that in fact told them we have not conducted any review, will not conduct any review of any portion of your S-1. Within that FOIA request, we also received letters from Encore and their underwriters saying we've already distributed 1,200 of these. Once those get distributed to investment banks and brokers, they will then go to third parties. Those republications, that was before any statute could have run. That's on the basis of the complaint. You treat the distribution of the prospecti to the ultimate investors as being a republication or is it part of a single publication once the SEC approved the registration statement? I do and the state court in California does as well. Those are republications. As counsel was trying to get to, if you have a book, the first time you publish a book, you have one publication. But if you take a volume two or something or you take it now in paperback and you update it, you send it to someone else, that's a republication. But if they're right about the registration statement not being covered, but you're right about the prospectus? And other things. Yeah. Where does that leave us? Do we, would part of the complaint be stricken and part not stricken? That's correct. It would be academic. We could not use presumably the S-1 because the litigation privilege would be co-extensive. Presumably the S-1 itself would not be the actionable statement. It would have to be the prospectuses. They also later put on their website and continued to publish on their website the same materials. And then there are other statements. We know now there were interactions with underwriters and other people that would have had the same kind of defamatory material. So the complaint would still go on even as is, or we could amend, as was asked, and again, I can't remember who. Judge Smith. I'm sorry. Judge Smith asked, we could amend. So you don't even get, it's not, it's like a period victory. I don't want to be pejorative, but it's just saying, okay, the S-1 is out, but everything else is in. We don't even have to go there. But this Court can say Prong-1 is satisfied because on the face of the complaint, they didn't provide any initial facts, and any facts in Mr. Moser's declaration, you have it already. Let me ask you also about the intentional affliction claim that I was asking the counsel about. Yes. Are there any limits to the litigation privilege? There are, absolutely. It's pretty broad. And again, I don't want to, I know when we have de novo, I don't want to say that, I shouldn't not look at Judge Byrne's opinion because it is, it's so apt. And he has a very large footnote that says that if this behavior occurred, it's outrageous and it's beyond what would be covered under settlement proceedings. And you're absolutely right, and that's what the courts have said. You can't go into a settlement proceeding, and you can certainly say, we're going to litigate this very hard, and, you know, we're going to spend as much money as possible, and it's going to be tough litigation, hard road, everyone knows that. There's no litigator that after a case says, I'd love that, let's do it again, let alone the client. The litigators might like it. Well, I don't know. You know, it still takes years off your life. But you cannot say things like, you mentioned, I'm going to harm your children, I'm going to drive a wedge between you and your clients, your partners, your wife. I'm going to cause you sleepless nights, you don't even, you have no idea yet how much we're going to do to you. That's beyond the pale, and that's what Judge Burns said. There are limits, and California courts have said that. It doesn't have to be criminal. I mean, that would be taking it far beyond any limit. What cases can you give us to that effect? Or refer me in your brief to where the California courts have said the litigation privilege goes to that point, i.e., you can't say something about the wife or the children or something that is not directly germane to the litigation. Yeah, let me see, if you just give me a moment, and I see my time is up, but I can get you the actual footnote. Here we go. It's on page 18, and I am... This is of your response? No, I'm sorry. This is of Judge Burns' order, but the cases are in there, and he cites at least one case where he says... The outrageous statements made by counsel on behalf of defendants were not made for purposes of settlement, and that's the key. I mean, a settlement conference is for the purposes of settlement, not for the purposes of threatening, punishing, intimidating, inflicting emotional distress. Of course, there's a necessary amount of distress for every client in litigation. So in answer to Judge Smith's question, the Fletcher case is your best shot here? Thank you. Well, that's the most apt case that the court would allow. I know there are others I can submit. That's good. Thank you very much, sir. Thank you, Your Honor. As I said before, you folks use up your time, but we'll give you two minutes, Lucy. I know you want to have lots of time here, but I have a question that was raised, interestingly enough, by your opposing counsel. If you're absolutely right about prong one, given the federal rules of civil procedure and the generosity of amendment and so on, what have you really gained in this litigation at this point? Well, there are two things, Your Honor. First of all... Lucy, you've got to get the clock going. There we go. Okay. Got it, go ahead. Two things, Your Honor.  First of all, I think the court has a lot of chaff here. The form S-1s are what this case is all about, and if you read the complaint, there's no way you can conclude to the other forms. But nothing that the S-1 is referred to in the complaint. They refer to other prospectives and other communications, but there's nothing at all. The S-1 is attached to the complaint. So that's the first question. The second question, Your Honor, is to the extent this Court gets to the second prong and decides various questions about it as a matter of law, if those they may well, those decisions of this Court may well apply to affect the decision of the trial court as to those. So, for example... I forget how many causes of action were alleged, but let's say nine or ten. If we struck four, you'd feel like you were well rewarded because four were struck. No, Your Honor. My point is if the Court were to say, for example, that these are not defamatory as a matter of law, that would apply both to these statements in the S-1 and it would apply to prospectives and other republications of those in any form. If they said that there was a statute of limitations, it may well apply. And that's better to do that in this setting than to go up through on a merits basis without the anti-slap situation? Well, Your Honor, I believe so, yes. It would certainly allow us to narrow this case. This case has become a normal case.  If I may say so, it almost seems like the anti-slap portion of this was to intimidate Mr. Moser to make it more expensive for him. Is there any truth to that? No, Your Honor. The entire point of the anti-slap statute is, as the California Supreme Court said in varying medical systems, the point of the statute is to prevent people from even having to go through a trial. But you're going to have to do that anyway by any stretch, are you not? There is nothing before us that enables us to decide every issue in prong two, right? May I answer the question? Sure. Your Honor, if the court were to say, for example, that these statements are not defamatory, that would apply and it would – Oh, I know it would help you, but the fact is it doesn't end the game, if you will. You've got to go back. You've got to try this case. Well, we might file a motion for judgment on the pleadings. We might file a motion for summary judgment. Once it's clear that these are not defamatory statements as a matter of law, they will go away before a long and expensive trial. Thank you so much. Mr. Daly, thank you. The case is argued as submitted.
judges: Silverman, Rawlinson, Smith